**SUMMONS**

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| NATHAN WERSAL,<br><br>     Plaintiff,<br><br>     v.<br><br>LIVINGSOCIAL, INC.,<br><br>     Defendant. | Court File No.: _____<br><br>Case Type:   <u>14. (Other Civil –</u><br>            <u>Consumer Protection)</u><br><br><br>**SUMMONS** |

THIS SUMMONS IS DIRECTED TO <u>LIVINGSOCIAL, INC.</u>

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons located at:

    Paul R. Hansmeier (MN Bar #387795)
    CLASS ACTION JUSTICE INSTITUTE, LLC
    40 South 7th Street
    Suite 212-313
    Minneapolis, MN 55402

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

**4. YOU WILL LOSE YOUR CASE. IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

**5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

**6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

_____        __1/11/13_____
Plaintiff's attorney's signature                         Dated

Paul R. Hansmeier (MN Bar #387795)

CLASS ACTION JUSTICE INSTITUTE, LLC
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*Attorney for Plaintiff*

Page 2 of 2

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| NATHAN WERSAL,<br><br>Plaintiff,<br><br>v.<br><br>LIVINGSOCIAL, INC.<br><br>Defendant. | Court File No.: _____<br><br>Case Type:   14. (Other Civil –<br>Consumer Protection)<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, Nathan Wersal, by and through his attorneys, upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, complains and alleges as follows:

### INTRODUCTION

1.      Plaintiff brings this action as an individual purchaser of a gift certificate from LivingSocial, Inc. ("LivingSocial"). These gift certificates, marketed as "vouchers" by LivingSocial, are sold and issued with expiration dates that are deceptive and illegal under federal and Minnesota law. LivingSocial partners and contracts with various retail businesses and merchants, such as G & D Foods, Inc. d/b/a Kafe 421 ("Kafe 421"), to sell and issue these illegal gift certificates.

2.     LivingSocial is a so-called "Daily Deal" website that claims to offer discounts on a variety of products and services, including restaurants and bars, hotels, salon and spas, sporting events, clothing and other retail items, and fitness classes and other recreational courses, among other things. LivingSocial offers these discounts in numerous geographic markets in the United States.

3.     LivingSocial offers discounts to consumers en masse by directly partnering with the retail businesses and merchants that provide the products or services. LivingSocial promises to increase the sales volumes of its retail partners by sending out daily e-mails promoting their products and services to its massive subscription network, which by its own account, includes over 34 million domestic users.

4.     Once a consumer purchases a LivingSocial gift certificate for a particular daily deal, LivingSocial sends a confirmatory e-mail with a link for downloading and printing the gift certificate. The gift certificate may then be redeemed with the retail business offering the product or service within a specified—and often unreasonably short—period of time.

5.     The gift certificates sold and issued by LivingSocial contain short expiration dates that are illegal under both federal and state laws. The Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. § 1693 et seq., and the Credit Card Accountability Responsibility and Disclosure Act (the "CARD Act"), expressly prohibit the sale and issuance of gift certificates with expiration dates of less than five years. Moreover, Minnesota has enacted gift certificate laws that go even further than this federal floor, prohibiting the sale and issuance of gift certificates with any expiration period.

6.     However, LivingSocial and its retail partners, including Kafe 421, market and sell gift certificates with limited expiration periods that are much shorter than the periods allowed

- 2 -

under both federal and state laws. Defendant knows full well that many consumers will not be able to use the gift certificates before the expiration date. LivingSocial's deliberate and systematic use of abbreviated expiration dates harms and deceives Minnesota consumers like Plaintiff.

7.     LivingSocial and its retail partners bank on the fact that many consumers will not manage to redeem their gift certificates before the limited expiration period—indeed, many consumers will never use their gift certificates, despite already having paid for the particular service or product. As a result, many consumers are left having purchased a gift certificate that is valueless to them. The fact that a substantial number of gift certificates are not redeemed before their expiration date creates a windfall for LivingSocial and its retail partners—the very result that Congress and the Minnesota Legislature intended to prevent by enacting legislation regulating the use of expiration dates on gift certificates.

8.     Mirroring the experience of many thousands of purchasers both nationwide and in Minnesota, Plaintiff was a victim of Defendant's unlawful and deceptive activities because he purchased a LivingSocial gift certificate containing an illegal expiration date, which he was unable to use before expiration.

9.     Accordingly, Plaintiff brings this action against LivingSocial for violations of the EFTA and Minnesota state gift certificate laws, as well as asserting common law claims for breach of contract, quasi-contract, restitution, unjust enrichment, and declaratory and injunctive relief.

10.     Plaintiff seeks all available damages and equitable relief, including, but not limited to, compensatory damages and/or restitution; damages under the CARD Act; an order enjoining Defendant from selling and issuing gift certificates with unlawful expiration dates and

other improper terms; punitive damages and/or disgorgement of unlawful profits; reasonable

attorneys' fees and expert fees; reimbursement of costs and expenses; and any additional relief that

this Court deems necessary, just or appropriate.

## PARTIES

11.     Plaintiff Nathan Wersal is a natural person and citizen of Hennepin County,

Minnesota. At all times relevant to this matter, Plaintiff resided, and continues to reside, in

Hopkins, Minnesota. During the relevant time period, Plaintiff received offers from LivingSocial

and purchased a gift certificate based on representations and claims made by LivingSocial.

Plaintiff purchased a LivingSocial gift certificate that was subject to an illegal expiration date.

12.     Plaintiff previously received e-mail notice that he was a settlement class member

in a proposed settlement of similar claims to those asserted herein. See Preliminary Approval and

Provisional Class Certification Order, *In re LivingSocial Marketing and Sales Practices Litig.*,

No. 1:11-mc-00472-ESH-AK (D.D.C. Oct. 26, 2012) (Dkt. No. 28). As of January 2, 2013,

Plaintiff has properly and timely "opted-out" or excluded himself from the proposed settlement

in that action, such that the resolution of the aforementioned litigation does not affect his rights

or release the claims asserted herein.

13.     Defendant LivingSocial, Inc. is a privately-held corporation organized under the

laws of Delaware, with its principal place of business located at 1445 New York Avenue, NW,

Suite 200, Washington, DC 20005.

## JURISDICTION AND VENUE

14.     This individual action is brought pursuant to the Minnesota private attorney

general statute, Minn. Stat. § 8.31 Subd. 3a. This Court has original jurisdiction over this dispute

pursuant to Minn. Stat. § 484.01 Subd.1.

15.     Hennepin County, Minnesota is the appropriate jurisdiction and venue because Plaintiff is located in Hennepin County, Minnesota; because a substantial portion of the events giving rise to Plaintiff's claims occurred in Minnesota; and because LivingSocial advertised to, made available to, and directed its websites and services at citizens of Minnesota, with the successful intent of soliciting business from citizens of and within Minnesota. LivingSocial conducts substantial business in the State of Minnesota through the promotion, sale, marketing, and provision of its services in the State of Minnesota.

16.     As set forth above, under the Minnesota Long-Arm Statute, Minn. Stat. § 543.19, and under the Due Process Clause of the United States Constitution, Hennepin County, Minnesota is the proper jurisdiction and venue for the resolution of this dispute. Defendant has sufficient contacts with the State of Minnesota that the exercise of jurisdiction over it by this Court is proper and does not offend any traditional notions of fair play or substantial justice.

## GENERAL ALLEGATIONS

17.     LivingSocial was originally founded in 2007 as Hungry Machine. LivingSocial launched its first Daily Deal on July 27, 2009. Since that time, LivingSocial has become one of the most popular social-buying websites in the world, behind only Groupon.

18.     LivingSocial promises consumers discounted deals on various products and services in approximately 189 markets. In order to receive the Daily Deals offered by LivingSocial, consumers must sign-up and provide their e-mail addresses and other personal information to LivingSocial. Over 34 million people in the United States reportedly have signed up to receive offers from LivingSocial.

19.     Each day, LivingSocial sends subscribers in each of the cities it operates in a "Daily Deal" e-mail, promoting the particular products or services of the retail businesses with

- 5 -

which it has partnered. Consumers interested in the particular "Daily Deal" may then purchase a gift certificate (i.e., "voucher") from LivingSocial for the product or service.

20.     To arouse consumer interest and create the urgency to buy the "Daily Deal" product or service, LivingSocial offers the "Daily Deal" for a very limited period of time - usually only 24 hours. This is intended to create—and does in fact create—a rush among consumers to purchase LivingSocial gift certificates.

21.     LivingSocial also uses electronic social media, such as Facebook and Twitter, to promote and stoke demand for its "Daily Deals," creating additional pressure among consumers to buy LivingSocial gift certificates before time runs out.

22.     Purchases of gift certificates are made directly through LivingSocial's website using the consumer's credit or debit card. Once consumers purchase the Daily Deal, they will receive an e-mail from LivingSocial, with a link to the gift certificate the following business day, typically at approximately 7:00 a.m. local time. Consumers may then follow and click the link and print the gift certificate or download it to certain electronic devices, such as smartphones.

23.     The gift certificates may then be directly redeemed with LivingSocial's retail partners, such as Kafe 421, who purport to offer the products and services indicated on the gift certificate.

24.     However, LivingSocial and retail partners like Kafe 421 impose illegal expiration dates on each gift certificate they promote and sell.

25.     LivingSocial and its retail partners, including Kafe 421, are well aware that after the initial frenzy to purchase the gift certificate, many consumers, including Plaintiff, will not be able to redeem their gift certificates before they expire.

26.    As a result, many consumers cannot and do not take advantage of and/or use the product or service they paid for before the expiration date imposed by Defendant, resulting in a substantial windfall for Defendant.

27.    In addition to imposing illegal expiration periods, LivingSocial and its retail partners place other deceptive and unfair conditions on gift certificates. For example, consumers are typically required by Defendant to redeem gift certificates in a single transaction. As a result, consumers are forced to redeem the gift certificates all at once and are unable to use the gift certificates in multiple transactions.

28.    Similarly, unused portions of the gift certificates may not be redeemed for cash. LivingSocial imposes unfair restrictions on the manner in which consumers can redeem their gift certificates for the products and services offered even though consumers have already paid in full for such products and services.

## A.    LivingSocial and Its Retail Partners Profit from the Use of Illegal Expiration Terms on LivingSocial Gift Certificates

29.    LivingSocial targets two markets—consumers who seek products or services by purchasing LivingSocial gift certificates, and retail businesses who wish to promote their products and services through LivingSocial. These retail businesses are willing to partner with LivingSocial and offer their products and services at a discount because LivingSocial promises to promote their products and services through its huge subscription base and guarantees them a specified volume of business. Indeed, by leveraging its enormous customer base and its comprehensive knowledge of social networking, LivingSocial is able to reach very large audiences, generating broad-based exposure for its retail partners.

30.    LivingSocial's business model, particularly its ability to establish partnerships with retail businesses nationwide, depends in large part on its systematic use of illegal expiration

- 7 -

dates. LivingSocial knows that its retail partners are not willing to offer their products and services at a discount to consumers through the sale of LivingSocial gift certificates without an agreement to limit the time period for which consumers can redeem the gift certificates. Indeed, it has been reported that upwards of 40% of all "Daily Deal" type gift certificates, such as those sold by LivingSocial, go unredeemed.[1] "Daily deal" websites like LivingSocial reportedly pitch these redemption statistics as an incentive to the retail businesses they are wooing. Accordingly, LivingSocial and its retail partners continue to flout the law by imposing illegal expiration dates on the LivingSocial gift certificates sold to consumers.

31.    LivingSocial attempts to circumvent federal and state gift certificate laws by inserting a disclaimer on some LivingSocial gift certificates in which it claims its expiration terms do not apply to any prepaid portion of the gift certificates. Such disclaimers are ineffective and provide no defense for LivingSocial. First, the disclaimer is buried at the bottom of certain LivingSocial gift certificates in tiny, barely legible font that is readily overlooked by consumers. Second, in prior versions of the gift certificate, the disclaimer is only found on the voucher itself, which must be downloaded and printed by the consumer. Thus, consumers who do not download and print their gift certificates will never have access to, nor knowledge of, the disclaimer. Third, the disclosure neither excuses nor justifies LivingSocial's use of illegal expiration periods because the placement of expiration dates on LivingSocial gift certificates constitutes *per se* violations of federal and state laws, for which there is no applicable exception. Fourth, LivingSocial's disclaimer is ineffective as it puts the onus on consumers to research their respective state's gift certificate laws as to the validity of expiration periods.

---

[1] Kelli B. Grant, *10 Things Daily Deal Sites Won't Say*, SmartMoney.com, May 11, 2011, http://www.smartmoney.com/spend/family-money/10-things-daily-deal-sites-wont-say-1301404072442/.

32.    LivingSocial reaps massive profits from this business model. LivingSocial reportedly takes for itself 30% to 50% on the sale of each gift certificate. LivingSocial reportedly made $100 million in revenue in 2010. LivingSocial's retail partners also profit from the increases in customer traffic that result from the sale of LivingSocial gift certificates. Again, LivingSocial's and its retail partners' undue profits are fueled by their use of illegal expiration periods on the gift certificates sold to consumers.

**B.    Plaintiff's Experience**

33.    On February 7, 2011, Plaintiff Nathan Wersal received a "Daily Deal" e-mail offer from LivingSocial for a gift certificate for Kafe 421, a restaurant located in the Dinkytown neighborhood of Minneapolis near the University of Minnesota.

34.    G & D Foods, Inc. d/b/a Kafe 421 is a corporation organized under the laws of Minnesota, with its principal place of business located at 421 14th Avenue SE, Minneapolis, Minnesota 55414.

35.    The "Daily Deal" offer, as set forth on LivingSocial's website, required Plaintiff to pay $15.00 in exchange for $30.00 to spend on food and drink at Kafe 421.

36.    Plaintiff purchased a gift certificate for Kafe 421, making a payment of $15.00 to LivingSocial through its website. *See* Exhibit 1, Copy of LivingSocial Receipt, attached hereto and incorporated herein.

37.    Plaintiff subsequently received an e-mail from LivingSocial on February 8, 2011, confirming his purchase of the gift certificate. An electronic version of his gift certificate in the PDF file format was attached to the e-mail. *See* Exhibit 2, Copy of LivingSocial Gift Certificate, attached hereto and incorporated herein.

38.    The gift certificate indicated that it expired on February 8, 2012. *See id.*

39.  Plaintiff was unable to redeem the gift certificate prior to its expiration on February 8, 2012.

**C.   Other's Experiences**

40.  Upon information and belief, many thousands of Minnesota consumers have lost millions of dollars because of the illegal expiration dates included on LivingSocial's gift certificates.

41.  Numerous blogs and other websites resound with complaints concerning LivingSocial's illegal and improper practices. Typifying these complaints is the following excerpt from a comment on the website of the *Star Tribune*:

> I paid $25 for $50 worth of merchandise from a store near my parents' house. I figured I'd have no trouble using the certificate before the expiration date printed on the voucher. It turns out I overestimated how many times to grandmother's house we'd go.

(available at http://www.startribune.com/business/yourmoney/119480274.html). Like many LivingSocial customers, this comment reflects the fact that many consumers are not able to use the gift certificate before the improper and abbreviated expiration date passes. As a result, many of these consumers received nothing.

## FIRST CLAIM FOR RELIEF
### Violations of the Credit Card Accountability Responsibility and Disclosure Act and Electronic Fund Transfer Act, 15 U.S.C. § 1693 *et seq.*

42.  Plaintiff incorporates and realleges the above paragraphs.

43.  The CARD Act, which amends the EFTA, prohibits the sale or issuance of any gift certificate that features or is subject to an expiration date, unless the expiration date is (i) five years or more from the date on which the gift certificate was issued; and (ii) conspicuously stated on the gift certificate.

44.     LivingSocial and its retail partners, including Kafe 421, sold and issued and/or agreed to sell and issue LivingSocial "vouchers," which are "gift certificates" as defined by 15 U.S.C. § 1693L-1(a)(2)(B), as such vouchers constitute electronic promises that are: (i) redeemable at a single merchant or an affiliated group of merchants; (ii) issued in a specified amount that may not be increased or reloaded; (iii) purchased on a prepaid basis in exchange for payment; and (iv) honored upon presentation by such single merchant or affiliated group of merchants for goods or services.

45.     At all relevant times, LivingSocial gift certificates were sold and issued to consumers, including Plaintiff, through electronic fund transfer systems established, facilitated and monitored by LivingSocial.

46.     LivingSocial does not issue gift certificates exclusively in paper form. LivingSocial provides an e-mail link or attachment to consumers to download and print such gift certificates. Consumers may also download LivingSocial gift certificates to their mobile phones through applications available on LivingSocial's website.

47.     LivingSocial's gift certificates, including the gift certificate purchased by Plaintiff, are marketed and sold to the general public and are not issued as part of any loyalty, award, or promotional program.

48.     LivingSocial and its retail partners violated the CARD Act and ETFA by selling and issuing and/or agreeing to sell and issue gift certificates with expiration dates less than five years from the date of purchase, which is prohibited under § 1693L-1(a)(2)(B) and § 1693L-1(c)(1).

49.     As a direct and proximate result of Defendant's unlawful acts and conduct, Plaintiff was deprived of the full use and benefit of his money that was charged, collected and

retained by LivingSocial and Kafe 421 through the sale of a gift certificate with an illegal expiration date.

50.     Pursuant to 15 U.S.C. § 1693m, Plaintiff seeks compensatory damages, including actual and statutory damages, injunctive and declaratory relief, as well as reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### Violations of the Minnesota Gift Certificate Statute, Minn. Stat. § 325G.53.

51.     Plaintiff incorporates and realleges the above paragraphs.

52.     Minnesota's gift certificate statute, Minn. Stat. § 325G.53 Subd. 2, prohibits the sale of gift certificates with any expiration dates.

53.     LivingSocial and its retail partners, including Kafe 421, sold and issued and/or agreed to sell and issue LivingSocial "vouchers," which are "gift certificates" as defined by § 325G.53, as such vouchers constitute promises, made for consideration, that goods or services will be provided to the owner of the voucher to the value shown in the voucher.

54.     Defendant violated Minnesota's gift certificate statute by selling and issuing and/or agreeing to sell and issue a gift certificate to Plaintiff containing an expiration date.

55.     As a direct and proximate result of Defendant's unlawful acts and conduct, Plaintiff was deprived of the full use and benefit of his money that was charged, collected and retained by LivingSocial and Kafe 421 through the sale of a gift certificate with an illegal expiration date.

56.     Pursuant to § 325G.53 and the Minnesota Private Attorney General Statute, Minn. Stat. § 8.31 Subd. 3a, Plaintiff seeks compensatory damages, injunctive and declaratory relief, as well as reasonable attorneys' fees and costs.

57. Plaintiff's individual claim for relief is in the public interest. LivingSocial violated the Minnesota gift certificate statute as described herein in the course of its business as part of a pattern and generalized course of conduct. LivingSocial's acts and practices as described herein have affected, and continue to affect, a great many consumers. A grant of the individual Plaintiff's requested relief would have a public benefit for the citizens of Minnesota.

## THIRD CLAIM FOR RELIEF
### Violations of the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*

58. Plaintiff hereby incorporates and realleges the above paragraphs.

59. The Minnesota Uniform Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.43 *et seq.*, was enacted to protect the public at large from thirteen separate types of false, misleading, and deceptive trade practices. *See* § 325D.44 Subd. 2. It allows persons likely to be damaged by a deceptive trade practice to obtain injunctive relief, as well as costs and attorneys' fees if the deceptive trade practice was willful and knowing. *See id.* § 325D.45.

60. LivingSocial is a "person" and its "Daily Deal" "vouchers" constitute goods or services within the meaning of the MDTPA.

61. LivingSocial violated the MDTPA by engaging in the following practices prohibited by § 325D.44 in transactions with Plaintiff which were intended to and did cause Plaintiff to purchase a "Daily Deal" gift certificate:

    a. "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have" (§ 325D.44 Subd. 1(5)), as in its failure to represent that the transaction involving LivingSocial gift certificates confers or involves obligations that are prohibited by law, particularly the imposition of illegal expiration dates and other onerous sales terms;

b. "represent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another" (§ 325D.44 Subd. 1(7)), as in its failure to represent that the transaction involving LivingSocial gift certificates confers or involves obligations that are prohibited by law, particularly the imposition of illegal expiration dates and other onerous sales terms;

c. and failing to disclose material information known at the time of the transaction in a way that "create[d] a likelihood of confusion or misunderstanding" (§ 325D.44 Subd. 1(13)), as in its failure to disclose that the transaction involving LivingSocial gift certificates confers or involves obligations that are prohibited by law, particularly the imposition of illegal expiration dates and other onerous sales terms.

62.   These false, misleading and deceptive acts or practices by LivingSocial and its retail partners were made "in the course of business" within the scope of the MDTPA.

63.   Defendant's act and practice of disseminating and/or agreeing to disseminate, through LivingSocial's website and other promotional channels, misleading and partial statements about LivingSocial gift certificates, has a tendency to mislead the public. Defendant's practice of omitting material information about the legality of LivingSocial gift certificates also has a tendency to mislead the public.

64.   Plaintiff's individual claim for relief is in the public interest. LivingSocial committed the false, misleading and deceptive acts described herein in the course of business as part of a pattern and generalized course of conduct. LivingSocial's deceptive business acts and practices have affected, and continue to affect, a great many consumers. A grant of the individual Plaintiff's requested relief would have a public benefit for the citizens of Minnesota.

65.    Plaintiff is "likely to be damaged" by the deceptive trade practices alleged herein within the meaning of Minn. Stat. § 325D.45 because Plaintiff is and remains the owner of a "Daily Deal" gift certificate subject to an illegal expiration date, which Plaintiff has and continues to be deprived of the full benefit thereof. Plaintiff furthermore continues to receive deceptive advertisements for "Daily Deal" offers sold by LivingSocial, despite unsubscribing from the LivingSocial direct e-mail list, which are advertised through the AmazonLocal Deals e-mail service.

66.    As a direct and proximate result of the knowingly and willfully deceptive trade practices of Defendant set forth above, Plaintiff has been injured. Plaintiff was deprived of the full use and benefit of his money that was charged, collected and retained by Defendant through the sale of a gift certificate with an illegal expiration date. Furthermore, Plaintiff would not have entered into a transaction with Defendant if he had known the truth.

67.    Pursuant to § 325D.45 and § 8.31 Subd. 3a, Plaintiff seeks injunctive and declaratory relief, as well as reasonable attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### Quasi-Contract/Restitution/Unjust Enrichment.

68.    Plaintiff incorporates and realleges the above paragraphs.

69.    Defendant has been unjustly enriched at the expense of and to the detriment of Plaintiff by its wrongful acts and omissions as described herein, including, but not limited to, knowingly and/or recklessly selling and issuing and/or agreeing to sell and issue LivingSocial gift certificates that feature and are subject to expiration dates that are prohibited under both federal and state laws; disseminating and/or agreeing to disseminate, through LivingSocial's website and other promotional channels, misleading and partial statements about LivingSocial gift certificates that have a tendency to mislead the public; forcing consumers, such as Plaintiff,

- 15 -

to redeem the gift certificates in the course of a single transaction; not providing for the exchange of any unused portion of the gift certificates for their cash value; and unfairly limiting consumers, such as Plaintiff, from using more than one LivingSocial gift certificate during each visit to the business offering the particular product or service.

70.   Defendant profited from its unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiff, under circumstances in which it would be unjust for Defendant to be permitted to retain the benefit. Defendant's retention of funds paid by Plaintiff violates the fundamental common-law principles of justice, equity, and good conscience.

71.   Plaintiff was deprived of the full use of his money that was charged and collected by Defendant through the sale of a LivingSocial gift certificate with an expiration date. Defendant was aware it was retaining such funds paid by Plaintiff.

72.   Defendant, therefore, should be ordered, to the extent there is no remedy provided by law, to return any and all funds obtained from Plaintiff's overpayment.

### FIFTH CLAIM FOR RELIEF
### Declaratory and Injunctive Relief.

73.   Plaintiff incorporates and realleges the above paragraphs.

74.   By this cause of action, Plaintiff seeks declaratory and injunctive relief against Defendant.

75.   Plaintiff is entitled to declaratory relief establishing that Defendant's conduct violates the CARD Act, the Minnesota gift certificate statute, and that Defendant is engaging in unfair and deceptive practices.

76.   Plaintiff is entitled to a declaration that the expiration date in the LivingSocial gift certificate is illegal and unenforceable. Defendant should be enjoined from enforcing the expiration date set forth in the LivingSocial gift certificate.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff requests judgment against the Defendant as follows:

a.  For an order enjoining Defendant from continuing to sell and issue LivingSocial gift certificates with illegal and/or deceptive expiration dates to prevent further violations of the law;

b.  For a declaration that Defendant's conduct was illegal, unfair, and deceptive, and for a declaration that the expiration date in the LivingSocial gift certificate is illegal and unenforceable.

c.  For an order awarding restitution of the monies wrongfully obtained as a result of Defendant's wrongful and illegal conduct;

d.  For compensatory and punitive damages, including actual and statutory damages, arising from Defendant's wrongful and illegal conduct;

e.  For an award of reasonable attorneys' fees and all costs and expenses incurred in the course of prosecuting this action;

f.  For pre- and post-judgment interest at the legal rate; and

g.  For such other and further relief as this Court may deem just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial for any and all Counts for which a trial by jury is permitted by law.

DATED: 1/11/13

Respectfully submitted,

By: _____

Paul R. Hansmeier (MN Bar #387795)
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*Attorney for Plaintiff*

## VERIFICATION AND ACKNOWLEDGMENT

I have read this document. To the best of my knowledge, the information contained in the document is well grounded in fact and is warranted by existing law.

I have not been determined by any court in Minnesota, or any other State, to be a frivolous litigant or subject to an Order precluding me from serving and filing this document.

I am not serving or filing this document for any improper purpose.

The undersigned hereby acknowledge that pursuant to Minn. Stat. 549.211, monetary and other sanctions may be imposed if the Court should find that the undersigned has violated Minn. Stat. 549.211, Subd. 2, by presenting a position which is unwarranted or for an improper purpose, as more fully defined in that statute.

DATED: 1/11/13

By: _____

Paul R. Hansmeier (MN Bar #387795)

EXHIBIT 1



# Receipt for Purchase 5754834

| Description | Quantity | Unit Price | Total Price |
|---|---|---|---|
| $30 to Spend on Food and Drink at Kafé 421 | 1 | $15.00 | $15.00 |
| **TOTAL** | 1 | | $15.00 |

## Payment Details

**Total Price** $15.00
**Paid On:** 02/08/2011
**Cardholder Name:** Nathan Wersal
**Card Number:** XXXX-XXXX-XXXX-6072
**Card Expiration Date:** 1/2013

# EXHIBIT 2



# $30 to Spend on Food and Drink at Kafé 421

## Instructions

1) Call 612-623-4900 to make your reservation
2) Print out voucher and bring to establishment or display iPhone/Android voucher
3) Present prior to ordering your meal
4) Enjoy!

**Voucher Number:**
## 10007142520

Purchased by: **Nathan Wersal**

Expiration: **February 08, 2012**

## The Fine Print

Limit 1 per person, up to 3 additional as gifts • Reservations required and subject to availability • Merchant cancellation/re-scheduling policy of 24 hours applies; voucher subject to forfeiture • Dine-in only (not valid for takeout or delivery) • Gratuity not included (Be nice and tip on the pre-discounted total!) • Not valid on catering • Not valid on happy hour specials (Monday - Friday), Holidays Dinners (Including Valentine's Weekend 2011), $25 Dinner For 2 on Tuesdays and Sundays, or Restaurant Week specials

Except where noted in the Fine Print:

- No cash value/cash back
- Tax and gratuity are not included
- Entire value must be used in one visit
- Cannot be combined with any other offer or promotion
- LivingSocial Terms and Conditions - livingsocial.com/terms

## Location

421 14th Avenue Southeast
Minneapolis, MN 55414
612-623-4900

**NEED ASSISTANCE?**   Call LivingSocial: 877-521-4191   Email: help@livingsocial.com

If the state or province where the merchant is located prohibits earlier termination, then the amount you paid for the voucher will expire five (5) years from the date the voucher is issued. The prepaid portion of the voucher will not expire in states and provinces where it is prohibited by law.