## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| NATHAN WERSAL, | No.: 0:13-cv-00381-DWF-FLN |
| Plaintiff, | Judge: Hon. Donovan W. Frank |
| | Magistrate Judge: Hon. Franklin L. |
| v. | Noel |
| LIVINGSOCIAL, INC. | Date:        May 23, 2013 |
| | Time:        9:00 AM |
| Defendant. | Courtroom:  7C |

## PLAINTIFF'S RESPONSE MEMORANDUM OF LAW
## IN OPPOSITION TO LIVINGSOCIAL'S MOTION TO DISMISS
## THE FIRST AMENDED COMPLAINT OR, IN THE ALTERNATIVE,
## TRANSFER VENUE TO THE DISTRICT OF COLUMBIA

Paul R. Hansmeier (MN Bar #387795)
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*Attorney for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

FACTUAL & PROCEDURAL BACKGROUND ......................................................... 1

APPLICABLE LEGAL STANDARDS ....................................................................... 3

   A.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER
        JURISDICTION .............................................................................................. 3

   B.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM ....................... 6

   C.   MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C.
        § 1404(A) ....................................................................................................... 7

ARGUMENT .............................................................................................................. 10

   A.   PLAINTIFF HAS ARTICLE III STANDING TO PURSUE THE
        CLAIMS ALLEGED IN THE COMPLAINT ................................................... 11

      1.   The Unlawful Expiration of the Voucher's Partial Value Constitutes
          a Concrete and Particularized Economic Injury-In-Fact............................ 11

      2.   Even Beyond Plaintiff's Direct Economic Injury, the Statutory
          Violations Alleged Suffice for Article III Standing Purposes ................... 14

   B.   THE COMPLAINT STATES CLAIMS UNDER THE EFTA, THE
        MGCS, AND THE MDTPA AGAINST DEFENDANT ................................... 17

      1.   Defendant Misstates the Law Regarding the Pleading Requirements
          for the Statutes Invoked in Plaintiff's First Amended Complaint.............. 18

      2.   Plaintiff Has Sufficiently Alleged a Causal Nexus Between
          Defendant's Statutory Violation and His Economic Injury ....................... 20

   C.   DEFENDANT HAS FAILED TO JUSTIFY A VENUE TRANSFER
        UNDER 28 U.S.C. § 1404(A) ......................................................................... 22

      1.   Defendant Cannot Enforce a Contractual Forum Selection Clause,
          Because the "Browsewrap" Contract Cited By Defendant Was Never
          Formed Due to LivingSocial's Obfuscatory Website Design.................... 23

      2.   Even If The Court Finds That the "Browsewrap" Contract Was
          Formed, the Contractual Forum Selection Clause Does Not Apply to
          Plaintiff's Claims Because They Do Not "Arise Out Of Or Relate
          To" the Contract ...................................................................................... 28

      3.   Whether A Forum-Selection Clause Applies Or Not, Defendant Has
          Wholly Failed To Carry Its Burden Of Proving That the § 1404(a)
          Factors Weigh In Favor of Transfer ........................................................ 29

CONCLUSION ........................................................................................................... 33

## INTRODUCTION

Plaintiff Wersal respectfully submits this response memorandum of law in opposition to the motion to dismiss, or in the alternative, to transfer venue filed by Defendant LivingSocial, Inc. ("LivingSocial") in this action. (Dkt. No. 7.) Plaintiff opposes all Defendant's arguments that any claim be dismissed, and opposes transfer of this action to the U.S. District Court for the District of Columbia. LivingSocial wrongly attempts to draw the Court's attention away from the undisputed fact that Plaintiff can no longer redeem his $30 gift certificate for its full value, and onto the contention that a lesser "$15 paid value would have been available to Mr. Wersal." (Dkt. No. 9, at 6.) The law recognizes no such distinction between "paid value" and "extra . . . promotional value," and Plaintiff has therefore suffered a concrete and particularized economic injury from LivingSocial's use of an illegal expiration date on his gift certificate. (*Id.* at 1, 6.) LivingSocial further asks this Court to transfer venue under 28 U.S.C. § 1404(a) despite having utterly failed to carry its burden of proof on any of the central factors that the Court must weigh. The Court should refuse to dismiss any of Plaintiff's claims, and should decline to transfer venue of this action.

## FACTUAL & PROCEDURAL BACKGROUND

On or about January 17, 2013, Plaintiff Wersal commenced this civil action in the Fourth Judicial District, County of Hennepin, for the State of Minnesota by causing service of a summons and complaint on Defendant. Defendant removed the complaint to the U.S. District Court for the District of Minnesota on February 15, 2013. (Dkt. No. 1.)

On February 21, 2013, Plaintiff filed and served a First Amended Complaint. (Dkt. No. 6.)

The First Amended Complaint alleges that LivingSocial sends e-mails advertising "Daily Deals." (Dkt. No. 6, ¶¶ 2, 19.)Mr. Wersal received such an e-mail, followed the link contained in that e-mail, and paid $15 in exchange for a $30 gift certificate for use at Kafe 421, a restaurant in the Dinkytown neighborhood of Minneapolis, Minnesota. (*Id.* at ¶¶ 34, 38–39.) This gift certificate contained an expiration date, and stated that it expired on February 8, 2012. (*Id.* at ¶ 45 & Ex. 6.) Plaintiff alleges that this expiration date was unlawful under both federal and Minnesota law. (*E.g.*, *id.* at ¶ 5, 8, 56, 62.) Due to the imposition of the expiration date, half of the total $30 value of Plaintiff's gift certificate—the $15 which is not the "prepaid portion," in LivingSocial's terminology—expired on February 8, 2012. (*See id.* at ¶¶ 32, 45 & Ex. 6.) Mr. Wersal was unable to redeem his $30 gift certificate prior to the expiration date, and is now barred by the illegal expiration date from realizing or benefitting from the gift certificate's full face value. (*See id.* at ¶¶ 47, 57, 63, 73–74.)

The First Amended Complaint states claims for relief against Defendant under the Electronic Funds Transfer Act ("EFTA"), as amended by the CARD Act, 15 U.S.C. § 1693 *et seq.* (Dkt. No. 6, ¶¶ 50–58.) The First Amended Complaint further states claims for relief under the Minnesota Gift Certificate Statute ("MGCS"), Minn. Stat. § 325G.53, and the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat. § 325D.43 *et seq.* (*Id.* ¶¶ 59–75.) It requests relief in the alternative under a theory of quasi-contract,

restitiution, and/or unjust enrichment, and requests declaratory and injunctive relief against Defendant. (*Id.* ¶¶ 76–84.)

On March 7, 2013, Defendant filed the instant Motion to Dismiss or, in the Alternative, Transfer Venue. (Dkt. No. 7.) In support, Defendant filed the sworn affidavit of Ben Getson, a product manager at LivingSocial, which stated that LivingSocial's website had changed since the times relevant to the First Amended Complaint and purported to describe and show how the relevant LivingSocial webpages would have looked at the relevant times. (Dkt. No. 10.) On March 22, 2013, Plaintiff filed his Objections to, and Motion to Strike, the Affidavit of Ben Getson, arguing upon information and belief that, contrary to statements made under oath, the affidavit was not made from personal knowledge and was inadmissible under the Federal Rules. (Dkt. No. 13.) Both motions are scheduled for hearing on May 23, 2013.

## APPLICABLE LEGAL STANDARDS

Defendant moves to dismiss or transfer the Complaint for lack of subject-matter jurisdiction and the failure to state a claim, and moves in the alternative for transfer of venue under 28 U.S.C. § 1404(a).[1] Defendant has failed to satisfy its burden as to each of these arguments.

## A.  MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Standing is the requirement that a party has a sufficient stake in a justiciable controversy to seek relief from a court. *Sierra Club v. Morton*, 405 U.S. 727, 731–32

---

[1] Defendant does not move the Court for dismissal for improper venue under Fed. R. Civ. P. 12(b)(3), and as such, that legal standard will not be addressed here.

(1972). To establish Article III standing, a plaintiff must "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004). For purposes of a motion to dismiss for lack of standing, the Court must accept as true all material allegations of the Complaint, and must construe the Complaint in favor of the complaining party. *Id.* at 501.

The Supreme Court has explained that the injury required by Article III may be "actual or threatened," and "may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (internal quotation omitted). Injury-in-fact may be found where an expectancy or entitlement is lost or diminished. *See, e.g.*, *Belles v. Schweiker*, 720 F.2d 509, 513–14 (8th Cir. 1993) (reduction in Social Security benefits was "an injury sufficient to confer standing"). Moreover, the Supreme Court has stated that even small injuries are sufficient under Article III: "important interests [may] be vindicated by plaintiffs with no more at stake in the outcome of an action than . . . a $5 fine and costs." *United States v. SCRAP*, 412 U.S. 669, 689 n.14 (1973).

Standing to bring claims under Minnesota statutory law is determined by Minnesota case law. The Minnesota Supreme Court has recognized that a legislative enactment can grant a plaintiff standing, separate and apart from the sufferance of an injury-in-fact. *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 493 (Minn. 1996) ("Standing is acquired in two ways: either the plaintiff has suffered some 'injury-in-fact' or the plaintiff is the beneficiary of some legislative enactment granting

- 4 -

standing."). "Statutory grants of standing are quite . . . broad as to consumer protection,"
including the Minnesota Deceptive Trade Practices Act ("MDTPA"), Minn. Stat.
§§ 325D.43 *et seq.*, which "contains its own legislative grant of standing." *Id.* at 496. The
Minnesota Gift Certificate Statute ("MGCS"), Minn. Stat. § 325G.53, is given a statutory
grant of standing by its reference to the Minnesota Private Attorney General Statute,
Minn. Stat. § 8.31, subd. 3a, which is "broadly construed to enhance consumer
protection." *See id.* The MDTPA grants "any person likely to be damaged by a deceptive
trade practice" standing, while the MGCS, through the Private Attorney General Statute,
grants standing to "any person injured" by a violation of the statute. *Id.* Thus, a violation
of either statute may suffice as a particularized Article III injury.

Under federal law, there is an open question as to whether a statutory violation can
itself constitute an injury-in-fact for Article III standing. Federal district courts have
allowed claims to proceed where plaintiffs relied primarily on an alleged statutory
violation as the basis for Article III standing. *See, e.g.*, *Gaos v. Google*, No. 5:10-cv-4809
EJD, 2012 WL 1094646, at *3 (N.D. Cal. Mar. 29, 2012) (noting that the Stored
Communications Act "provides a right to judicial relief based only on a violation of the
statute without additional injury"); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012
WL 2119193, at *7 (N.D. Cal. Jun. 11, 2012) (finding standing based on an alleged
violation of the Video Privacy Protection Act). The same is true for the Electronic Funds
Transfer Act ("EFTA"), the particular statute at issue here. *See, e.g.*, *Susec v. Greenbrier*,
No. 5:11-0968, 2012 WL 3079233, at *4 (S.D.W.Va. Jul. 10, 2012). This issue—whether
a plaintiff has standing to sue based only upon an alleged statutory violation of the

EFTA—is currently pending before the Eighth Circuit in *Charvat v. First National Bank of Wahoo*, No. 12-2797 (8th Cir. filed Oct. 1, 2012). Briefing is complete in *Charvat*, but the case has not yet been scheduled for oral argument. The U.S. Department of Justice has filed an amicus brief on behalf of the plaintiff-appellants, urging the Eighth Circuit to recognize their Article III standing. *See* Brief for Amicus United States in Support of Appellants at 12–28, *Charvat v. First National Bank of Wahoo*, No. 12-2797 (8th Cir. Nov. 28, 2012).

## B.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Under Rule 8 of the Federal Rules of Civil Procedure, pleadings "shall contain a short and plain statement of the claim showing that the pleader is entitled to relief." A pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). All reasonable inferences are to be drawn in favor of the non-moving party; *Twombly* and *Iqbal* did not change this fundamental tenet of Rule 12(b)(6) practice. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009).

Pleading requirements for claims under Minnesota law are defined by Minnesota case law. For claims under the MDTPA and under the Minnesota Private Attorney General Statute, the Minnesota legislature has eliminated the pleading requirement of individual reliance. *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 11–12 (Minn. 2001). Imposing a requirement to plead traditional common-law reliance would

be contrary to the legislature's intent. *Id.* at 12. While plaintiffs must eventually prove a

"causal nexus" between the wrongful conduct and their injury, the Minnesota Supreme

Court has clearly stated that causation is not an appropriate inquiry on a motion to

dismiss. *Id.* at 13–14 ("It would be inappropriate in the context of a Rule 12 motion to

dismiss to delineate in detail what proof is necessary . . ."). Rather, causation should be

assessed "in light of not just the allegations, but the evidence offered," *i.e.*, on summary

judgment. *Id.* at 15.

## C.     MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(A)

A motion to transfer venue under 28 U.S.C. § 1404(a) is distinct and separate from

the doctrine of *forum non conveniens*. *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp.

1176, 1179 (D. Minn. 1996). While there is a considerable amount of judicial discretion

involved, motions to transfer "should not be freely granted." *In re Nine Mile, Ltd.*, 692

F.2d 56, 61 (8th Cir. 1982). Courts begin the analysis by affording the plaintiff's choice

of forum "presumptive weight"—precedent requires the Court to defer to a plaintiff's

choice of forum unless the other factors "strongly" weigh in favor of transfer. *Brockman*,

923 F. Supp. at 1179; *cf. Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)

(movants must show their inconvenience "*strongly*" outweighs the inconvenience to

plaintiffs) (emphasis in original), *cert. denied*, 401 U.S. 910 (1971). Therefore, the party

seeking a transfer under § 1404(a) "bears the burden of proving that a transfer is

warranted." *Terra Int'l, Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir.

1997)

The other factors that courts must weigh, and which the moving party has the burden to prove, are: (1) the convenience of the parties, (2) the convenience of the nonparty witnesses, and (3) the interest of justice, in light of the presumption that the case should remain in the present district. *Terra Int'l, Inc.*, 119 F.3d 688, 691 (8th Cir. 1997); *Brockman*, 923 F. Supp. at 1179–80. On the first factor, movants must show that transfer would not result in "[m]erely shifting the inconvenience from one side to the other." *Terra Int'l, Inc.*, 119 F.3d at 696–97; *see also Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964). Movants must show that the convenience factor "*strongly*" weighs in favor of transfer. *Shutte*, 431 F.2d at 25 (emphasis in original). On the second factor, movants must "specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover." 15 Charles Alan Wright et al., Fed. Practice & Procedure § 3851 (3d ed.). Where any witnesses are beyond the subpoena power of the court, the court should consider whether the evidence can be adequately presented by deposition without prejudice. *See Nelson v. Bekins Van Lines Co.*, 747 F. Supp. 532, 535 (D. Minn. 1990). On the third factor, courts should consider the relative financial resources of the parties, and which party can better bear the costs of litigating in a distant forum. *Scorpiniti v. FOX Television Studios, Inc.*, No. 11-cv-64-LRR, 2012 WL 3791314, at *12 (N.D. Iowa Aug. 31, 2012); *see also Coast-To-Coast Stores, Inc. v. Womack-Bowers, Inc.*, 594 F. Supp. 731, 734 (D. Minn. 1984); *cf. Jacques v. Dakota, Minn. & E. R.R. Corp.*, 2008 WL 835651, at *3 (D. Minn. Mar. 27, 2008) (finding that corporate defendant was better positioned to bear the costs of litigation in a distant forum than individual plaintiff). Courts should also bear in mind

local interests and the importance of local law to the case, and the relative familiarity of the two courts with the law to be applied: "There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems . . . in law foreign to itself." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947); *see also Van Dusen*, 376 U.S. at 643–45.

While affidavits or other evidence outside the pleadings are generally not relevant to a Rule 12 motion to dismiss, this is not true of a motion to transfer venue under 28 U.S.C. § 1404(a). The resolution of such motions often necessarily depends on facts established with affidavits or other evidence outside the pleadings: "In view of the heavy burden imposed upon the movant [in the context of a § 1404(a) motion to transfer], the factual content of a supporting affidavit is very important." *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 148 (10th Cir. 1967). For example, numerous courts of appeal, including the Eighth Circuit, have required movants to specify not only the key witnesses to be called, but to make a general statement of what their testimony would have included, so that its materiality may be weighed. *See Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991); *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293–94 (7th Cir. 1989); *Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979); *Chicago, Rock Island and Pacific R.R. Co. v. Hugh Breeding, Inc.*, 232 F.2d 584, 587–88 (10th Cir. 1956).

One such factual matter relevant to a § 1404(a) motion to transfer is the existence and applicability of a contractual forum selection clause entered into by the parties. "[A]

- 9 -

valid and applicable forum selection clause in a contract is 'a significant factor that figures centrally in the district court's calculus.'" *Terra Int'l, Inc.*, 119 F.3d at 691 (8th Cir. 1997) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). However, since the Defendant has here attempted to enforce a contractual forum selection clause—and since Plaintiff denies that such a contract was formed or that such a clause can be applied—the Court must "address issues of contract formation in cyberspace" in order to resolve the motion. *Specht v. Netscape Comm'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) (Sotomayor, J.) (determining applicability of an arbitration clause found on a webpage). Contract formation in such a situation requires that a reasonably prudent offeree in Plaintiff's position would necessarily have known of the existence of the terms, prior to acting on the offer. *See id.* at 30–32. "[T]here is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there," and therefore, "a reference to the existence of . . . terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms." *Id.* at 32.

## ARGUMENT

The Court should deny Defendant's motion in its entirety. Plaintiff has Article III standing to pursue his claims, both through the concrete and particularized economic injury he has alleged, as well as through the statutory violations themselves. Furthermore, Plaintiff has stated viable claims for relief, and is not required in any sense to allege what he did with the gift certificate after purchase—except insofar as he has alleged that Defendant's illegal expiration date has prevented and continues to prevent him from receiving the full benefit of his bargain. Any other information on Plaintiff's gift

certificate use would only speak to the mitigation of damages, and is irrelevant to a motion to dismiss.  Finally, while Plaintiff disputes that the forum-selection clause invoked by Defendant was part of a validly-formed contract and disputes that it can be applied to Plaintiff's claims, in any case Defendant has utterly failed to justify a transfer of venue to the U.S. District Court for the District of Columbia under 28 U.S.C. § 1404(a) regardless of the formation or applicability of that clause.

## A.   PLAINTIFF HAS ARTICLE III STANDING TO PURSUE THE CLAIMS ALLEGED IN THE COMPLAINT

The Complaint alleges a traditional economic injury-in-fact, *i.e.*, the fact that Plaintiff paid for a $30 voucher, which was subject to an illegal expiration date such that Plaintiff is now prohibited from receiving the benefit of his bargain. This economic loss constitutes a concrete and particularized injury for the purposes of Article III standing. The Court therefore need not and should not address whether Plaintiff has also suffered an injury-in-fact by virtue of Defendant's statutory violation. However, if the Court does not find Plaintiff's economic loss to be a sufficient injury-in-fact, it should nevertheless defer to Minnesota case law which authorizes standing based on statutory violations, as well as to the Eighth Circuit's pending resolution of whether federal claims may be brought based solely upon a statutory violation.

### 1.   The Unlawful Expiration of the Voucher's Partial Value Constitutes a Concrete and Particularized Economic Injury-In-Fact

Plaintiff has standing because he alleges economic loss suffered as a result of Defendant's misconduct. Defendant wrongly attempts to draw the Court's attention away from the undisputed fact that Plaintiff can no longer redeem his $30 voucher for its full

value, and onto the contention that the voucher's "$15 paid value would have been available to Mr. Wersal." (Dkt. No. 9, at 6.) This is a mere sophistic distraction from the central issue in this case. Defendant's arguments rely on drawing a distinction between "paid value" and "extra . . . promotional value," but the law recognizes no such distinction. (*Id.* at 1, 6.) Rather, lured by LivingSocial's promise of discounted "Daily Deals," Plaintiff paid $15 in exchange for $30 worth of food at the Kafe 421 restaurant. (First Am. Compl., Dkt. No. 6, ¶¶ 38–39.) Any diminishment in his $30 interest is a diminishment in the full benefit of Plaintiff's bargain, and therefore a paradigmatic concrete and particularized economic injury. *See, e.g.*, *Belles*, 720 F.2d t 513–514 (reduction in Social Security benefits was "an injury sufficient to confer standing").

Neither the federal EFTA nor the MGCS distinguishes between "paid" and "promotional" value, as Defendant argues this Court should do. *See generally* 15 U.S.C. § 1693L-1; Minn. Stat. § 325G.53. The EFTA provision sued under simply states that it is unlawful to sell or issue a gift certificate that is subject to an expiration date that is less than five years after the date of issuance. 15 U.S.C. § 1693L-1(c). While "loyalty, award, or promotional gift card[s]" are excluded from the statute, Congress allowed the Bureau of Consumer Financial Protection to define and regulate such gift cards. *Id.* §§ 1693L-1(a)(2)(D)(iii), (d). Importantly, the statute contemplates excluding *entire gift cards*—not *portions of value* contained in a single gift certificate. In fact, the Bureau of Consumer Financial Protection defined a "[l]oyalty, award, or promotional gift card" as including, among other things, a "statement indicating that the card, code or other device is issued for loyalty, award, or promotional purposes, which must be included on the front of the

card, code, or other device." 12 C.F.R. § 1005.20(a)(4). The gift certificate in question here includes no such disclosure (*see* Dkt. No. 6, Ex. 6), and in any case fits squarely within Congress's definition of a "gift certificate" as being purchased on a prepaid basis in exchange for payment, even if the consideration did not match the specified amount of the gift certificate. (*See* Dkt. No. 6, ¶¶ 52, 55.) The fact that Plaintiff received a good deal is simply irrelevant to the statutory prohibition, and the expiration of any part of the $30 value of Plaintiff's Kafe 421 gift certificate violated federal law.

The Minnesota Gift Certificate Statute ("MGCS") is even clearer in prohibiting the distinction that Defendant relies upon. *See* Minn. Stat. § 325G.53. The MGCS defines a "gift certificate" as "a tangible record evidencing a promise, *made for consideration*, by the seller or issuer of the record that goods or services will be provided to the owner of the record *to the value shown in the record* . . . ." Minn. Stat. § 325G.53, Subd. 1(a) (emphasis added). This definition clearly allows for the possibility that a buyer may pay a lesser amount in consideration for a gift certificate than the value shown in the record, and yet Minnesota still prohibits any "gift certificate that is subject to an expiration date or service fee of any kind . . . ." Minn. Stat. § 325G.53, Subd. 2. Plaintiff paid $15 in consideration for a gift certificate showing a $30 value; he therefore had a right to $30 in value. Defendant's statement that Plaintiff could now redeem his $30 voucher for half of its stated value does not disprove the existence of an injury-in-fact—to the contrary, Defendant has proven the existence of Article III standing.

Defendant readily admits that it has classified half of Plaintiff's gift certificate as "the extra $15 promotional value," and that this amount has "expired." (Dkt. No. 9, at 1.)

This is a direct, concrete and particularized economic injury. Whether Plaintiff can or cannot still redeem *half* of the value of that voucher is of no consequence to whether he has suffered an injury from the contested expiration date. Thus, whether Plaintiff has *tried* to redeem his voucher for a mere half of its face value is irrelevant to the question of Article III injury-in-fact. It would be absurd for the Court to hold that Plaintiff has not suffered an economic injury from Defendant's allegedly illegal imposition of an expiration date, when Defendant has *directly averred* in its motion papers that half of the value of Plaintiff's voucher has "expired." (*Id.* at 1.) Plaintiff has suffered a concrete economic loss of at least $15 of expected value in goods and services due to Defendant's violations of federal and Minnesota law—a sufficient injury for Article III standing. *See, e.g.*, *SCRAP*, 412 U.S. at 689 n.14 ($5 fine and costs sufficient); *Belles*, 720 F.2d at 513–14 (loss of expected Social Security benefits sufficient).

### 2.     Even Beyond Plaintiff's Direct Economic Injury, the Statutory Violations Alleged Suffice for Article III Standing Purposes

Because Plaintiff alleged that he cannot redeem his $30 gift certificate for its full face value, and because Defendant has averred that $15 of that sum has "expired," this Court need not and should not address the hypothetical question of whether an individual who suffers a statutory violation of the EFTA's and MGCS's prohibitions on expiration dates, but does *not* incur any economic loss, can establish Article III injury-in-fact. However, if the Court does address this question, it should defer to Minnesota case law which establishes that the statutory violations alleged here may themselves constitute a

cognizable injury-in-fact, and to the pending decision in *Charvat v. First National Bank of Wahoo*, No. 12-2797 (8th Cir. filed Oct. 1, 2012).

It is well-established that the "injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Mass. v. EPA*, 549 U.S. 497, 516–17 (2007) (quoting *Defenders of Wildlife*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in the judgment)). Standing in cases alleging a statutory violation depends on "whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

Plaintiff alleges violations of the federal EFTA, as modified by the CARD Act, and therefore has the requisite standing to bring this action. (*See, e.g.*, Complaint, Dkt. No. 6, ¶¶ 50–58.) Under that federal statute, consumers have the right to purchase gift certificates without any expiration date, unless such expiration date is at least five years from the date of issuance and conspicuously stated. *Id.* at ¶ 127; 15 U.S.C. § 1693L-1(c)(2)(A). The CARD Act was enacted in response to concerns that issuers of gift certificates were taking advantage of consumers by imposing restrictive expiration terms on gift certificates. *See Am. Exp. Travel Related Servs. Co., Inc. v. Sidamon-Eristoff*, 755 F. Supp. 2d 556, 588 (D.N.J. 2010) (citing S.414, CARD Act, S. Rep. 111-16 (May 4, 2009)). Congress explicitly recognized that the imposition of expiration dates of less than

five years from the date of issuance is an "unfair or deceptive" practice for which

consumers may seek redress. *Id.*

The EFTA itself provides consumers with the right to seek both actual *and/or*

statutory damages for violations of the gift certificate provisions, and the liability accrued

upon LivingSocial's failure to comply with the statute. 15 U.S.C. § 1693m(a); *see also*

*Regions Bank ATM Fee Notice Litig.*, No. 2:11-md-2202-KS-MTP, 2011 WL 4036691, at

*4 (S.D. Miss. Sept. 12, 2011). Nothing in the CARD Act or the EFTA requires a

consumer seeking relief to demonstrate whether there was an attempt to redeem the gift

certificate before the expiration period. The mere fact that the seller imposed prohibited

expiration terms on the gift certificate is itself a violation of the statute, and an invasion

of a consumer's legally protected rights. 15 U.S.C. § 1693m(a) ("any person who fails to

comply with any provision of this subchapter with respect to any consumer . . . is liable to

such consumer"); *see also Am. Exp. Travel*, 755 F. Supp. 2d at 25 (citing legislative

history of the CARD Act). This invasion of consumer rights is an Article III injury-in-

fact.

In addition to his EFTA claim, Plaintiff alleges Defendant's violation of

Minnesota state consumer protection statutes, which create legally protected rights for

consumers by prohibiting the imposition of any expiration dates on gift certificates and

by prohibiting deceptive practices. (*See* Complaint, Dkt. No. 6, ¶¶ 59–75.) Minnesota has

recognized that these statutes themselves contain a grant of standing equivalent to an

injury-in-fact. *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d at 493. Thus, under

Minnesota law, the fact that Defendant issued and Plaintiff purchased a gift certificate

subject to an illegal expiration date is itself an invasion of Plaintiff's consumer rights to be free of such practices.

Plaintiff's claim under the EFTA, as modified by the CARD Act, readily satisfies Article III's standing requirement—even based upon the statutory violation itself. *See, e.g.*, *Susec v. Greenbrier*, No. 5:11-0968, 2012 WL 3079233, at *4 (S.D.W.Va. Jul. 10, 2012). So too do Plaintiff's claims under the Minnesota consumer protection statutes cited in the Complaint, the MGCS and the MDTPA. However, Plaintiff acknowledges that the Eighth Circuit's forthcoming opinion in *Charvat v. First National Bank of Wahoo*, No. 12-2797 (8th Cir. filed Oct. 1, 2012), may control on this question. Therefore, Plaintiff urges the Court not to reach this unnecessary question, and to instead rule that Plaintiff's actual economic loss of at least $15 is a sufficient injury-in-fact for Article III standing.

**B.    THE COMPLAINT STATES CLAIMS UNDER THE EFTA, THE MGCS, AND THE MDTPA AGAINST DEFENDANT**

While most of Defendant's Rule 12 motion focuses on standing and injury-in-fact, Defendant also briefly touches upon the First Amended Complaint's alleged failure to state a claim. Defendant argues that the First Amended Complaint fails to "plead a causal nexus between an alleged injury and the alleged wrongful conduct." (Dkt. No. 9, at 5.) Defendant's argument misstates both the law and the relevant facts. While causation is not an appropriate inquiry on a motion to dismiss, Plaintiff has nevertheless successfully stated how Defendant's illegal statutory violations caused him to suffer a particularized and concrete financial injury, and has successfully stated his claims for relief.

- 17 -

1.    **Defendant Misstates the Law Regarding the Pleading Requirements for the Statutes Invoked in Plaintiff's First Amended Complaint**

The Minnesota legislature has eliminated the pleading requirement of individual reliance from the Minnesota statutes invoked in the First Amended Complaint. *See Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 11–12 (Minn. 2001). Imposing a requirement to plead traditional common-law reliance would be contrary to the legislature's intent. *Id.* at 12. While plaintiffs must *eventually* prove a "causal nexus" between the wrongful conduct and their injury, the Minnesota Supreme Court has clearly stated that causation is an inappropriate inquiry on a motion to dismiss. *Id.* at 13–14 ("It would be inappropriate in the context of a Rule 12 motion to dismiss to delineate in detail what proof is necessary . . ."). Rather, causation should be assessed "in light of not just the allegations, but the evidence offered," *i.e.*, on summary judgment. *Id.* at 15.

Defendant cites *Bernstein v. Extendicare Health Services, Inc.* ("*Bernstein II*"), 653 F. Supp. 2d 939, 944 (D. Minn. 2009) (Frank, J.), for the contrary proposition that "a plaintiff must plead a causal nexus . . . ." (Dkt. No. 9, at 5.) This is a willful misreading of the decision. The original order dismissing the plaintiff's claims was not based upon causation, but upon a finding that the misrepresentations cited were puffery. *Bernstein v. Extendicare Health Services, Inc.* ("*Bernstein I*"), 607 F. Supp. 2d 1027, 1031–32 (D. Minn. 2009) (Frank, J.). On the motion for reconsideration, the court's decision was made on the same puffery grounds, and the court's comments about causation were dicta, offered in the alternative. *Bernstein II*, 653 F. Supp. 2d at 943–45 ("[E]ven if such a claim could be made . . . ."). However, those comments are not truly about causation—

- 18 -

the court's statements are properly read as comments on the plaintiff's failure to plead a

concrete injury for which a causal nexus could, conceivably, eventually be proven. *See*

*id.* at 944 ("[S]he did not *plead an injury* with a causal nexus to an alleged

misstatement.") (emphasis added); *Id.* at 945 ("Neither Plaintiff, nor Anderson or Ditter,

have alleged that they were transferred or discharged *in violation of applicable laws* . . . .

Instead, they allege *a more amorphous injury* . . . .") (emphasis added). Here, in contrast,

Plaintiff alleges a concrete and particularized economic injury, which resulted from

Defendant's issuance of a gift certificate with an expiration date in violation of applicable

laws, and therefore the *Bernstein* court's comments are inapplicable to the instant case.

Similarly, Defendant cites *Milavetz, Gallop & Milavetz, P.A. v. Wells Fargo Bank,*

*N.A.*, No. 12-0875 (MJD/JJG), 2012 WL 4058065 (D. Minn. Aug. 22, 2012), report and

recommendation adopted, 2012 WL 4056715 (D. Minn. Sept. 14, 2012), for the

untenable proposition that Plaintiff is "required" to allege a causal nexus. (Dkt. No. 9, at

5.) Again, the magistrate judge's report was not decided on this issue, but instead found

that the plaintiff's MDTPA claim should be preliminarily dismissed on standing grounds.

*Milavetz*, 2012 WL 4058065, at *4–5 (addressing failure to state a claim

"[a]lternatively"). Where the court did comment on causation, it wrote, correctly, that

"Plaintiff is not required to allege the precise facts (who, what, when, and where)

demonstrating causation." Insofar as that court spoke of a "requirement of pleading

causation," it was an error of law to ignore the Minnesota Supreme Court's statement that

causation is an inappropriate inquiry on a motion to dismiss. *See Group Health Plan,*

*Inc.*, 621 N.W.2d at 13–15.

Defendant also attacks Plaintiff's federal EFTA claim based on his alleged failure to plead how he used the Kafe 421 gift certificate after his purchase. (Dkt. No. 9, at 5.) However, under federal pleading standards, Plaintiff is not required to allege his conduct post-purchase—particularly his efforts to redeem his gift certificate. *See, e.g.*, *Performance Contracting, Inc. v. Rapid Response Constr., Inc.*, 267 F.R.D. 422, 424 (D.D.C. 2010). At most, what the Plaintiff did or did not do with his gift certificate after purchase involves a merits-based inquiry that goes to the mitigation of damages, which is irrelevant at this preliminary stage. The extent to which a plaintiff might be able to mitigate damages is a "factual question inappropriate for disposition in a Motion to Dismiss." *PJM Interconnection LLC v. Gorton*, No. 08-216-JJF, 2009 WL 840548, at *2 (D. Del. Mar. 30, 2009); *Dandino v. Tieri*, 878 F. Supp. 129, 131 (N.D. Ill. 1994) ("[F]ailure to mitigate does not by itself render his otherwise properly pled claim inadequate.").

## 2. Plaintiff Has Sufficiently Alleged a Causal Nexus Between Defendant's Statutory Violation and His Economic Injury

In any case, even if the Court agrees with Defendant on the legal standard for pleading claims under the statutes invoked in the First Amended Complaint, Plaintiff has sufficiently alleged a causal nexus between Defendant's wrongful conduct and his economic injury.

The First Amended Complaint alleges that Plaintiff received a "Daily Deal" e-mail offer for a gift certificate for goods and services at Kafe 421, that the offer was for a $30 gift certificate in exchange for $15 consideration, and that Plaintiff purchased the gift

certificate. (First Am. Compl., Dkt. No. 6, ¶¶ 34, 36, 38–39.) It alleges that the gift

certificate, upon delivery to Plaintiff, was marked with an expiration date of February 8,

2012. (*Id.* at ¶¶ 45–46.) It alleges that Plaintiff was unable to redeem the gift certificate

for its face value prior to the expiration date, and alleges that the expiration date was

illegal under federal and Minnesota law. (*Id.* at ¶¶ 47, 51–56, 60–62.) It further alleges

that the unlawful expiration date imposed by Defendant deprived Plaintiff of the full

benefit of his bargain, injuring him economically. (*See id.* at ¶¶ 57, 63.) The First

Amended Complaint further alleges, in support of Plaintiff's MDTPA claim, that

Defendant's failure to disclose or admit that its expiration date was illegal and

unenforceable deprived, and continues to deprive, him of the full benefit of his bargain.

(*See id.* at ¶¶ 69, 73–74.)

Causation is shown in Plaintiff's allegations that the illegal expiration date—and

Defendant's continuing insistence that the expiration date is legal and enforceable—has

prevented him from being able to receive the full benefit of his bargain. (*See id.* at ¶¶ 57,

63, 73–74.) These allegations directly state that LivingSocial's decision to place an illegal

expiration date on the gift certificate was the cause of Plaintiff's present economic injury.

Logically, if Defendant had not put an illegal expiration date on the gift certificate, or had

not claimed or continued to insist that the expiration date was legal and enforceable, then

Plaintiff would unambiguously be able to redeem his gift certificate for its full $30 value

at Kafe 421. This is precisely the causal nexus that Defendant alleges is required. To the

extent that Defendant argues that Plaintiff should have alleged what he did with the gift

certificate after his purchase, again, Plaintiff has no obligation to allege facts related to

mitigation of damages, which are in any case irrelevant to a 12(b)(6) motion. Thus, each of Defendant's arguments fail, and neither the First Amended Complaint nor any individual claim should be dismissed under Fed. R. Civ. P. 12(b)(6).

## C.   DEFENDANT HAS FAILED TO JUSTIFY A VENUE TRANSFER UNDER 28 U.S.C. § 1404(A)

Defendant asks the Court to transfer this case to the U.S. District Court for the District of Columbia under § 1404(a), but has utterly failed to meet its burden of proof to support any of the factors the Court must weigh in its analysis. Defendant leans heavily on the contention that a forum-selection clause found in its "Terms and Conditions" can be enforced against Plaintiff. (*E.g.*, Dkt. No. 9, at 7.) This is false. Plaintiff did not have actual notice of those "Terms and Conditions," and LivingSocial's website was designed in such a way that a reasonably prudent person in Plaintiff's position would necessarily have known of the existence of the terms prior to acting on the "Daily Deal" offer. Therefore, the contract containing the forum-selection clause was never formed. Even if the Court should find that this contract was formed, the forum-selection clause cannot apply by its own terms where, as here, the claims do not arise out of or relate to the contract. Finally and fatally, Defendant has concentrated on the alleged forum-selection clause to the near exclusion of any of the other relevant factors under § 1404(a), and has utterly failed to meet its burden of proof. As a result, Defendant has failed to justify transfer as a matter of law—regardless of whether a forum-selection clause is found to apply.

1.    **Defendant Cannot Enforce a Contractual Forum Selection Clause, Because the "Browsewrap" Contract Cited By Defendant Was Never Formed Due to LivingSocial's Obfuscatory Website Design**

Plaintiff disputes that he was aware of any "Terms and Conditions" prior to signing up for "Daily Deal" e-mails or prior to purchasing the Kafe 421 gift certificate. (*See, e.g.*, First Am. Compl., Dkt. No. 6, ¶¶ 36–37, 40–44.) Without actual notice of contractual terms and conditions, contract formation "turns on the user's constructive knowledge of the hyperlinked terms." *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 836 (S.D.N.Y. 2012). "Most courts which have considered the issue . . . have held that in order to state a plausible claim for relief based upon a browsewrap agreement, the website user must have had actual or constructive notice of the site's terms and conditions, and must have manifested assent to them." *Cvent, Inc. v. Eventbrite, Inc.*, 739 F. Supp. 2d 927, 937–38 (E.D. Va. 2010) (declining to enforce where terms and conditions "only appear[ed] on [a] website via a link buried at the bottom of the first page" where users "are not required to click on that link"). Moreover, the overwhelming majority of cases in which courts have enforced browsewrap agreements have done so against businesses or other sophisticated commercial entities rather than, as here, against a consumer. *See* Mark A. Lemley, *Terms of Use*, 91 Minn. L. Rev. 459, 472 (2006) ("An examination of the cases that have considered browsewraps in the last five years demonstrates that the courts have been willing to enforce terms of use against corporations, but have not been willing to do so against individuals.") With that background, the relevant legal question as to constructive knowledge is whether a reasonably prudent person in Plaintiff's position would have necessarily known of the

existence of the terms, prior to acting on the offer. *Specht v. Netscape Comm'ns Corp.*, 306 F.3d 17, 30–32 (2d Cir. 2002) (Sotomayor, J.).

Defendant cites a number of cases for the proposition that the terms and conditions should be held to apply to Plaintiff, including *Fjeta v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012); *Burcham v. Expedia, Inc.*, No. 4:07-cv-1963 CDP, 2009 WL 586513 (E.D. Mo. Mar. 6, 2009); and *Cairo Inc. v. Crossmedia Services, Inc.*, No. C 04-04825, 2005 WL 756610 (N.D. Cal. 2005)—but each of these is wholly distinguishable from the instant case. *Fjeta* presented a hybrid between a browsewrap and a clickwrap agreement, where the consumer had been directly presented with the hyperlinked phrase "Terms of Use." 841 F. Supp. 2d at 835, 838, 839–40. The website at issue in *Burcham* presented a classic clickwrap agreement, which either displayed the full text of the terms or conditions, or required the user to check a box stating "I agree to the terms and conditions" where the phrase "terms and conditions" was a hyperlink to the full text. 2009 WL 586513, at *1, 3. And *Cairo, Inc.* presented a case of enforcement against a sophisticated business competitor rather than an individual consumer, where the competitor had used robot software to access the site but also had actual knowledge of the terms. 2005 WL 756610, at *1, 3, 5.

In this case, Plaintiff has stated that he had no actual knowledge of any terms and conditions containing a forum-selection clause prior to his purchase. (First. Am. Compl., Dkt. No. 6, ¶ 40.) Plaintiff was never presented with the full text of the terms and conditions, nor was he asked explicitly to consent to them. Furthermore, Plaintiff has stated and provided evidence of what a reasonably prudent consumer in his position

would have seen, and what steps they would have had to take in order to view any terms and conditions, based on LivingSocial's current website pages for the Kafe 421 "Daily Deal."

      A reasonably prudent consumer would not have seen any reference or hyperlink to terms and conditions in the initial "Daily Deal" e-mail, because it contained none. (*Id.* at ¶ 36 & Ex. 1.) Upon visiting the "Daily Deal" website, a reasonably prudent consumer would not have seen any reference to or hyperlink to terms and conditions, because there was none visible. (*Id.* at ¶¶ 37, 41 & Ex. 2.) A reasonably prudent consumer would have had to click on a tab labeled "Fine Print," in order to reveal and then click on a hyperlink in small type labeled "Other conditions apply," in order to reveal a pop-up window which finally had a link to LivingSocial's "Terms and Conditions"—a three-step process that no reasonably prudent person could be expected to comply with. (*Id.* at ¶¶ 42–44 & Ex. 4, Ex. 5.) "[A] reference to the existence of . . . terms on a submerged screen is not sufficient to place consumers on inquiry or constructive notice of those terms. *Specht*, 306 F.3d at 32 (Sotomayor, J.). All of the other information in the "Fine Print" and "Other conditions apply" sections were restrictions on how the gift certificate could be used; a reasonably prudent consumer would expect such restrictions on the deal itself, but would not necessarily expect terms restricting his choice of venue for litigation, or the choice of law to be applied. The district court in *Specht* was critical of similarly ambiguous wording used in the notice of the existence of terms where the link read, "Please review and agree to the terms of the [agreement] before downloading and using the software." *Specht I*, 150 F. Supp. 2d 585, 588 (S.D.N.Y. 2001). The district court

disapproved of this seemingly-straightforward language, calling it a "mild request" and a "mere invitation, not . . . a condition," and therefore not adequate notice of a binding contract. *Id.* at 596. By analogy, the initial notice wording of "Fine Print" and "Other conditions apply" is vague, misleading, a mere request, and ultimately not adequate notice to a reasonably prudent person.

Defendant attempts to complicate the matter by introducing its own evidence of what certain webpages would have looked like at the time of Plaintiff's purchase, or at the time he signed up to receive "Daily Deal" e-mails. (*See* Aff. of Ben Getson, Dkt. No. 10.) As a preliminary matter, this evidence is improperly made without personal knowledge and is inadmissible, and may not properly be considered. (*See* Memo. In Supp. of Mot. to Strike Aff. of Ben Getson, Dkt. No. 15.) However, even if the Court considers this evidence—which it should not—it would still show that a reasonably prudent person, in Plaintiff's position, would not have been on constructive notice of the existence of the disputed terms or conditions.

First, the disputed affidavit attempts to show that a link to "terms and conditions" was present on the bottom of webpages soliciting consumers to sign up to receive "Daily Deal" e-mails. (Dkt. No. 10, Ex. A.) But that link is in a very small font, on the bottom of the screen, in what appears to be grey text that is not underlined. (*See id.*) Courts have strongly disapproved of such links. *Specht*, 306 F.3d at 32 ("[T]here is no reason to assume that viewers will scroll down . . . ."); *Pollstar v. Gigmania, Ltd.*, 170 F. Supp. 2d 974, 981 (E.D. Cal. 2000) (disapproving of link to license agreement in "small grey print" where "text is not underlined"). Second, the affiant admits that upon arriving at the

Daily Deal webpage, a reasonable person in Plaintiff's position would have had to look in the "fine print" for a link stating that "Other conditions apply," and would have had to click on that link in order to see a pop-up window with a link to the terms and conditions. (Dkt. No. 10, ¶¶ 8–9.) This is substantially similar to the process outlined in Plaintiff's First Amended Complaint, and is inadequate to put a reasonably prudent person on constructive notice for the same reasons. Finally, Defendant presents a "Daily Deal" purchasing page for "Asia Bay Sushi Bar & Thai" which states, in very fine grey print, that "By purchasing, you agree to the deal fine print and the LivingSocial terms and conditions." (*Id.* at Ex. E, Ex. F.) The words "fine print" are in blue and function as a hyperlink, but are not underlined. (*Id.*) Clicking on "fine print" leads to a pop-up that states the web address for the terms—livingsocial.com/terms—but does not hyperlink to those terms. (*Id.* at ¶ 10 & Ex. F.) This presents the same notice problems as the advertisement addressed earlier, plus more—the text is very fine, the "fine print" link is not underlined and is vague in content, and ultimately there is no actual hyperlink to the terms and conditions, which sets this case apart from every other case on electronic contracting known to Plaintiff. Without a hyperlink, consumers would be expected to use the copy & paste functions of their computers to highlight the address, copy it, paste it in to their browser's address bar, and then visit the address. This is not the kind of presentation that can be said to *necessarily* communicate the terms to a reasonably prudent consumer.

Not only did Plaintiff not have actual notice of the disputed terms and conditions, but in addition a reasonably prudent person standing in Plaintiff's position would not

have been on constructive notice of those terms. Thus, no contractual forum-selection

clause can apply to Plaintiff's claims, because no such contract was formed. This holds

true regardless of whether Plaintiff's evidence or Defendant's evidence is considered,

though Plaintiff reiterates that Defendant's evidence is improper. (*See* Dkt. Nos. 13, 15.)

However, even if the Court holds that a contract was formed, the forum-selection clause

would not apply to Plaintiff's claims, because they do not "arise out of or relate to" that

agreement.

     **2.**    **Even If The Court Finds That the "Browsewrap" Contract Was Formed, the Contractual Forum Selection Clause Does Not Apply to Plaintiff's Claims Because They Do Not "Arise Out Of Or Relate To" the Contract**

     The forum-selection clause cited by Defendant does not apply to Plaintiff's claims

by its own terms. That clause reads: "Any claim or dispute between you and LivingSocial

***that arises out of or relates to this Agreement*** shall be decided exclusively by a court of

competent jurisdiction located in the District of Columbia." (Dkt. No. 9, at 8; Dkt. No.

10, Ex. B.) In this action, Plaintiff has asserted claims that neither arise out of, nor relate

to, the Terms and Conditions agreement referenced by Defendant. Plaintiff asserts claims

based upon the expiration date imposed by Defendant on its Kafe 421 "Daily Deal" gift

certificate. Nowhere in the Terms and Conditions agreement is an expiration date

referenced or addressed. (*See generally* Dkt. No. 10, Ex. B.) Nor are federal or state

statutes, which govern the legality of expiration dates. In general, a contractual forum-

selection clause will only govern a contractual dispute. The EFTA was enacted "to

provide a basic framework establishing the rights, liabilities, and responsibilities of

- 28 -

participants in electronic fund transfer systems," separate and apart from any contractual

obligations. *Hospicomm, Inc. v. Fleet Bank, NA*, 338 F. Supp. 2d 578, 586 (E.D. Pa.

2004) (citing 15 U.S.C. § 1693). Similarly, Minnesota's state consumer protection

statutes sound at least partially in tort. *See In re St. Jude Medical, Inc.*, No. 01-1396

(JRT/FLN), 2006 WL 2943154, at *5 (D. Minn. Oct. 13, 2006) ("A cause of action under

consumer protection statutes is not based entirely in either tort or contract law."), *rev'd*

*on other grounds*, 522 F.3d 836 (8th Cir. 2007). Because the statutes invoked in the First

Amended Complaint construct their own schemes of rights and liabilities, far apart from

the subject matter of the Terms and Conditions agreement, this suit does not arise out of

or relate to that agreement and its forum-selection clause should not be applied here.

**3.     Whether A Forum-Selection Clause Applies Or Not, Defendant Has Wholly Failed To Carry Its Burden Of Proving That the § 1404(a) Factors Weigh In Favor of Transfer**

As Plaintiff has argued here, and in its Objections To, and Motion to Strike, the

Affidavit of Ben Getson (Dkt. Nos. 13, 15), Defendant has failed to prove that any

forum-selection clause applies to Plaintiff's claims. However, in the alternative, even if

such a clause *did* apply, Defendant has *still* failed to carry its burden to justify venue

transfer under § 1404(a). While a forum-selection clause "will be a significant factor that

figures centrally in the district court's calculus," it must be "weigh[ed] in the balance"

with "a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

29 (1988). Also weighed in that calculus is Plaintiff's choice of forum in Minnesota,

which is entitled to "presumptive weight," and which the Court must defer to in the

absence of a strong showing otherwise. *Brockman*, 923 F. Supp. at 1179. Because

Defendant has utterly failed to meet its burden of proof on any of the other relevant factors, it has failed to overcome the presumption in favor of a Minnesota venue, and the Court must not order transfer under § 1404(a). Furthermore, as Plaintiff will show, these factors actually weigh strongly against transfer.

The factors that the Court must weigh, and which Defendant had the burden to prove, are: (1) the convenience of the parties, (2) the convenience of the nonparty witnesses, and (3) the interest of justice, in light of the presumption that the case should remain in the present district. *Terra Int'l, Inc.*, 119 F.3d 688, 691, 697 (8th Cir. 1997); *Brockman*, 923 F. Supp. at 1179–80. Defendant does not address any of these factors directly, or with sufficient proof. On the first factor, Defendant cites to the First Amended Complaint for the proposition that "LivingSocial is headquartered in the District of Columbia." (Dkt. No. 9, at 11.) However, when standing alone, this statement actually weighs *against* transfer, since it shows merely that transfer would shift the inconvenience from one side to the other. Defendant had the burden to prove that this result would *not* occur, and moreover, to prove that the convenience factor "*strongly*" weighed in their favor. *Terra Int'l, Inc.*, 119 F.3d at 696–97; *Shutte*, 431 F.2d at 25. Judging by the evidence presented, Plaintiff will be equally inconvenienced by litigating in the District of Columbia as Defendant would be inconvenienced litigating here. Thus, the first factor weighs strongly in favor of this litigation remaining in the District of Minnesota.

On the second factor, the convenience of nonparty witnesses, Defendant merely quotes the Judicial Panel on Multidistrict Litigation's ("JPML") statement that "the majority of relevant documents and witnesses are located there." (Dkt. No. 9, at 11.)

- 30 -

However, the JPML's inquiry is not based upon the same factors as this Court must address, and the relevance of this statement is therefore unclear. Even the statement that a "majority" of witnesses are in Washington D.C. is irrelevant, since the Eighth Circuit has instructed that "sheer numbers of witnesses will not decide which way the convenience factor tips." *Terra Int'l, Inc.*, 119 F.3d at 696. No information is given about whether the witnesses are first-party witnesses or nonparties, whether they are key or ancilliary witnesses, what their testimony would cover, or whether that evidence could be adequately presented by deposition without prejudice. *See Bekins Van Lines Co.*, 747 F. Supp at 535; 15 Charles Alan Wright et al., Fed. Practice & Procedure § 3851 (3d ed.). And Defendant certainly did not specify, by affidavit or otherwise, the key witnesses to be called or the materiality of their testimony, which would allow the Court to properly weigh them. *See Reid-Walen*, 933 F.2d at 1396. Thus, Defendant has again failed to carry its burden of proof. On the other hand, Plaintiff's First Amended Complaint clearly states that G & D Foods, Inc. d/b/a/ Kafe 421, a potential key nonparty witness, is located in Minneapolis, Minnesota. (Dkt. No. 6, ¶ 35.) The second factor therefore strongly weighs in favor of this litigation remaining in the District of Minnesota.

The only remaining fact cited by Defendant is irrelevant to the Court's calculus. Defendant states that "*In re LivingSocial* involves claims similar to those made in this action, and is the class action from which Plaintiff opted out." (Dkt. No. 9, at 11.) However, Defendant does not cite—and Plaintiff is unaware of—*any* relevant authority showing that similarity of claims to another action is a factor relevant to the Court's consideration of a motion to transfer under § 1404(a).

Defendant does not mention the third factor, the interest of justice—perhaps because it weighs heavily in favor of continued venue in the District of Minnesota. The relative financial resources of the parties are obvious; Plaintiff is an individual and Defendant is a large public corporation, making Defendant far more able to bear the costs of litigating in a distant forum. *See Scorpiniti*, 2012 WL 3791314, at *12; *Jacques*, 2008 WL 835651, at *3; *Coast-To-Coast Stores, Inc.*, 594 F. Supp. at 734. Furthermore, this case involves two claims under Minnesota statutory laws, and the issues presented will therefore be familiar to a court venued in Minnesota but foreign to a court venued in the District of Columbia. This further weighs against transfer. *See Gulf Oil Corp.*, 330 U.S. at 509; *Van Dusen*, 376 U.S. at 643–45. Thus, the third factor strongly weighs in favor of this litigation remaining in the District of Minnesota.

While Defendant has failed to meet its burden of proof on *any* of the central factors the Court must consider on a § 1404(a) motion to transfer, Plaintiff has shown that each of those central factors weighs strongly against transfer. Therefore, even if the Court finds that a forum-selection clause applies to Plaintiff's claims, it would be the only factor weighing against the judicial presumption in favor of Plaintiff's choice of venue in Minnesota, and could not alone overcome that presumption as a matter of law. When the three central factors are added to the calculus—each of which weighs strongly in favor of this litigation remaining in the District of Minnesota—the only possible conclusion is that Defendant's § 1404(a) transfer motion must be denied.

## CONCLUSION

The proper resolution of this motion is for the Court to deny it in its entirety. Plaintiff has shown a concrete and particularized economic injury and has standing to bring his well-plead statutory claims under federal and Minnesota law, for all of the reasons stated herein. The Court need not and should not reach the question of standing based upon a statutory violation alone, which is pending resolution in *Charvat*, No. 12-2797 (8th Cir. filed Oct. 1, 2012). In addition, Plaintiff has shown that he had neither actual nor constructive notice of any forum-selection clause, that the disputed forum-selection clause does not apply to his claims, and that in any case Defendant has failed to carry its burden of proof on any of the central factors in the § 1404(a) analysis such that it can overcome the strong presumption in favor of venue remaining in Minnesota.

Respectfully submitted,

DATED: March 28, 2013

By:   _____/s/ Paul R. Hansmeier_____
Paul R. Hansmeier (MN Bar #387795)
CLASS ACTION JUSTICE INSTITUTE, LLC
40 South 7th Street
Suite 212-313
Minneapolis, MN 55402
Telephone: (612) 234-5744
mail@classjustice.org
*Attorney for Plaintiff*

- 33 -